# IN THE DISTRICT COURT FOR THE UNITED STATES OF AMERICA
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **Pioneer Christian Academy,** | ] |
| **Plaintiff,** | ] |
| vs. | ] Case No: |
| **The Cincinnati Insurance Co.** | ] JURY DEMAND |
| **Defendants.** | ] |

## Complaint

Comes now the Plaintiff, Pioneer Christian Academy, by and through counsel, and file this Complaint against the Defendant for their actions as stated below:

### PARTIES, JURISDICTION AND VENUE

1. Pioneer Christian Academy (hereinafter Pioneer) is a non-profit corporation incorporated in the State of Tennessee.

2. Pioneer's main place of business is 4479 Jackson Road, Whites Creek, TN 37189.

3. Defendant Cincinnati Insurance Co. is a foreign corporation whose main place of business is 6200 South Gilmore Road, Fairfield, Ohio 45014

4. Defendant is authorized to do business in the State of Tennessee.

5. Defendant offers auto, home, life, business and life insurance across the United States, including Tennessee.

6. Defendant entered into an insurance contract with Plaintiff for property located at 4479 Jackson Road, Whites Creek, Tennessee. (hereinafter, the insured property)

7. This complaint arises out of water damage to the insured property and Plaintiffs subsequent losses.

8. All of the facts giving rise to this cause of action occurred in Davidson County, Tennessee.

9. Federal Jurisdiction exists in this matter pursuant to 28 USC § 1332(a), as this civil action is between citizens of different states and the amount in controversy exceeds $75,000.00.

10. Plaintiff filed bankruptcy under Chapter 11 and is currently a Debtor in Possession. *See In Re: Pioneer Christian Academy*, In the Bankruptcy Court for the Middle District of Tennessee Case No. 3:12-bk-01545.

11. Counsel for the Plaintiff was authorized to represent Plaintiff in this matter by court order dated May 15, 2012. (*In Re: Pioneer Christian Academy*, Doc. No. 47)

**FACTUAL ALLEGATIONS**

12. Plaintiff and Defendant entered into an insurance policy, which provided coverage from September 5, 2008 until September 5, 2011.[1]

13. The policy covered the "insured property" as identified above.

14. The covered property was located in Davidson County, Tennessee.

15. Plaintiffs had made all appropriate payments on the policy prior to August 6, 2010.

---

[1] See attached Exhibit A

16. The insurance policy covered, among other things, "loss of business income and extra expense".

17. The language of the policy stated coverage for "loss of Business Income and Extra Expense" included "rental value."

18. The "insured property" was the subject of a lease between Pioneer and Global Academy, Inc., a "charter school" (hereinafter Global).[2]

19. The lease for the property commenced on June 1, 2009.

20. The lease was scheduled to terminate on June 30, 2014.

21. Pursuant to the lease, Global was to pay rent to Pioneer in the amount of $196,500.00.

22. Global made payments to Pioneer until July, 2010.

23. In July 2010, Global abandoned the property and had their status as a "charter school" revoked.

24. Pioneer started efforts to mitigate their damages because of Global's abandonment of the property by contacting potential tenants.

25. Before renting to Global, Pioneer had other entities interested in leasing the property.

26. Pursuant to the lease, Pioneer retained the right to reenter and take possession of the property should Global default under the lease.

27. Pioneer retained the right to hold Global liable for the difference of any rents lost as a result of their default.

28. Pioneer was in contact with other potential tenants for the property throughout July, 2010.

---

[2] See attached Exhibit B

29. One of the potential tenants was Family Christian Academy.

30. At some time prior to August 3, 2010, Family Christian Academy determined it would like to lease the property.

31. On August 3, 2010, Ms. Belinda Scarlatta requested Rev. Gage, Chairman of Pioneer's Board of Directors, to send to her for review "a lease agreement that would formalize" the parties agreement.

32. On August 6, 2010, water damage occurred to the insured property.

33. The water damage was so severe it made the facility unusable for the purpose of a school.

34. As such, a lease was never signed between Pioneer and Family Christian Academy.

35. Pioneer submitted its claim for lost rental value to Pioneer.

36. Defendant initially denied the claim because they claimed there was no coverage available under the policy for loss of business income.

37. Defendant mailed a letter to Plaintiffs informing them of this denial on Thursday, June 9, 2011.[3]

38. Pioneer received the letter the following week.

39. Pioneer Christian contacted the Defendant along with their agent to show Pioneer did purchase coverage for loss of business income.

40. Pioneer Christian and their agent showed to the Defendant the lack of coverage was simply due to clerical error.

41. Defendant re-opened its investigation into the claim.

---

[3] See attached Exhibit C

42. After sending the June letter, Defendant admitted the Plaintiffs purchased the appropriate coverage for loss of business income.

43. By letter dated August 3, 2011, Pioneer denied the claim because there was "no signed lease" for the property at the time of the loss.[4]

44. A signed lease is not a requirement for a valid claim for lost business income/ rental value.

45. However, a lease did exist with Global Academy.

46. Cincinnati was aware of this and still chose to deny the claim.

47. Cincinnati performed an investigation which was "goal oriented".

48. Cincinnati had determined it would not pay the claim no matter what set of facts existed.

49. As such, the denial was made in bad faith.

50. Pioneer had a separate party ready to lease the property prior to the damage.

51. Pioneer provided to Defendant a copy of an affidavit from Ms. Belinda Scarlate stating she was planning on leasing the property in November, 2010.

52. After Defendant discovered coverage did exist under the policy, Defendant contacted Ms. Scarlate about the affidavit for the first time.

53. In response to the August 3, 2011 letter from Pioneer, Mr. Sydney Crawford made a demand for payment under the policy stating in particular:

> "Mr. Mayo, we are sending you this letter as one final effort to persuade you to retreat from the extremely unreasonable positions you have taken and deal with our claim in good faith."[5]

---

[4] See attached Exhibit D
[5] See attached Exhibit E

54. On October 11, 2011 Pioneer through their attorney sent correspondence again demanding payment pursuant to the Tennessee Bad Faith Act, Tenn Code Ann § 56-7-105.[6]

55. Defendant remained resolute in its decision and refused to pay the claim.

56. No evidence warrants a denial of the claim.

57. Defendant has failed to pay the claim even though they are legally obligated to do so and they have been put on notice pursuant to the Tennessee Bad Faith Act, Tenn. Code Ann § 56-7-105.

58. On February 20, 2012, Plaintiff, as a result of the loss sustained by Defendant's refusal to pay in good faith was forced to file Chapter 11 Bankruptcy. (*In Re: Pioneer Christian Academy*, In the Bankruptcy Court for the Middle District of Tennessee Case No. 3:12-bk-01545)

59. On May 16, 2012, the honorable Marian F. Harrison signed an order, authorizing Plaintiff to employ the undersigned attorney as counsel in this matter. (Doc. No. 47)

## CAUSES OF ACTION

## COUNT I- BREACH OF CONTRACT

60. Paragraphs 1 to 59 are hereby re-alleged as if they were fully restated herein.

61. Plaintiffs and Defendant had entered into a valid contract for insurance.

62. Under the contract, Defendant was required to pay for losses due to collapse at the covered property.

63. Plaintiffs suffered losses due to collapse at the covered property.

---

[6] See attached Exhibit F

64. Defendant refused to pay for these losses as the contract required.

## COUNT II- TENNESSEE CONSUMER PROTECTION ACT

65. Paragraphs 1 to 64 are hereby re-alleged as if they were fully restated herein.

66. Plaintiffs bring this Count under the Tennessee Consumer Protection Act (hereinafter the "Act"), T.C.A. §§ 47-18-101 *et seq*.

67. Plaintiffs are consumers, natural persons, or individuals and thus are "persons" under T.C.A. § 47-18-109 (3).

68. Defendant is a "corporation" or "other legal or commercial entity however organized" and thus is a "person" under the T.C.A. §47-18-103 (9).

69. Defendant engaged in trade or commerce as defined by T.C.A. § 47-18-109 (11).

70. The providing of insurance under a valid insurance policy in exchange for payment of premiums constitutes trade or commerce under the Act.

71. The contract provides that damage for "collapse" loss would be covered.

72. Defendant refused to pay the claim as Defendant felt the Plaintiffs were in a position to keep them from seeking legal redress for their improper denial.

73. None of the exceptions to coverage under this insurance policy apply.

74. Defendant has attempted to invent an exception to avoid paying valid claims under a valid insurance policy.

75. Defendant harassed Plaintiffs during the course of their investigation into the claim in hopes that they would not pursue further action on their wrongful denial.

76. Defendant was negligent in the manner it handled the investigation leading to the wrongful denial of the claims.

77. Defendant, either intentionally or negligently, refused to investigate this matter fully and as a result the claims were wrongfully denied.

78. Defendant turned a "blind eye" to the truth in this matter so that they may deny the claims.

79. Defendant based their decision to deny the claims on nothing more than wild speculation.

80. Defendant denied the claims in hopes that Plaintiffs would not take any further legal action against them.

81. Defendant has refused to identify their alleged "factual bases" for the denial of the claims in hopes that no legal action would be taken against them. In reality, no such factual bases exist.

82. Defendant has denied the claims in an attempt to "play the numbers" that the Plaintiffs would either give up, or wear down so that the case may be settled for a lesser amount than Plaintiffs are entitled to.

83. Defendant has denied valid claims with knowledge that no valid reason exists to deny said policy.

84. Defendants' acts or practices listed above were unfair and/ or deceptive and as such violate the Consumer Protection Act. <u>Tucker v. Sierra Builders</u>, 180 S.W. 3d 109, (Tenn. Ct. App. 2005)

85. Defendants committed or engaged in unfair or deceptive acts or practices affecting the conduct of any trade or commerce and constituted unlawful acts or practices in violation of T.C.A. §47-18-104(a).

86. Defendant has engaged in a pattern of the above-listed activities in their dealings with homeowners over the United States, thereby warranting an award of punitive damages.

87. Separately, Defendant's acts or practices violated particular subsections of T.C.A. §47-18-104(b), namely: "Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:"

    A.    (b)(12) – "Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law."

    B    (b)(27) -- "Engaging in any other act or practice which is deceptive to the consumer or to any other person."

    C.    (b)(5) – "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have."

    D.    (b)(7) - "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;"

E. (b)(9) – "Advertising goods or services with intent not to sell them as advertised"

F. (b) (19) – "Representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve;"

G. (b) (21) – "Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services;"

H. (b) (27) - Engaging in any other act or practice which is deceptive to the consumer or to any other person;

88. Pursuant to T.C.A. §47-18-112, the Consumer Protection Act's remedies are cumulative and supplemental to all other existing remedies. Invoking it does not prohibit or exclude using another remedy.

89. The exemptions from the Consumer Protection Act are set forth at T.C.A. §47-18-111.

90. Defendant's activities do not fit or meet any of the exemptions specified under T.C.A. §47-18-111.

91. Plaintiffs bring this Count under T.C.A. §47-18-109. They suffered an ascertainable loss of money, property or thing of value as a result of Defendant's use or employment of an unfair or deceptive act or practice prohibited by the Consumer Protection Act or in violation of the T.C.A. §47-18-104 (a) and (b), as set forth above.

92. Plaintiffs bring this action to recover damages permitted by the Consumer Protection Act.

93. Defendant's unfair or deceptive acts or practices were willful or knowing and Plaintiffs are entitled to treble damages under T.C.A. §47-18-109.

94. The acts and practices of Insurance companies, such as Defendant, are not outside the scope of the Tennessee Consumer Protection Act. Myint v. Allstate, 970 S.W. 2d 920, 926 (Tenn. 1998).

95. Insurance companies will be held liable under the Act if their conduct in handling, investigating, or denying claims is unfair or deceptive. Myint at 927.

96. Insurance companies will be held liable if their claims handling procedures are unfair or deceptive pursuant to the Act. Sparks v. Allstate Ins. Co. 98 F.Supp.2d 933, 938 (W.D. Tenn., 2000).

97. As a result of Defendant's violation of the Tennessee Consumer Protection Act, Plaintiffs suffered losses.

98. Many of the actions, which would constitute a violation of the Tennessee Consumer Protection Act on the part of the insurance company, occurred before April, 2011.

99. This would include refusing to officially "deny" the claim until the legislature of the State of Tennessee passed legislation stating the Act no longer applied to the acts of insurance companies.

### COUNT III- NEGLIGENCE

100. Paragraphs 1 to 99 are hereby re-alleged as if they were fully restated herein.

101. Defendant owed Plaintiffs a duty to investigate the claims properly before determining that they were not responsible its payment.

102. Defendant, by accepting the premium payments on the insurance policy, further owed Plaintiffs a duty to pay valid claims.

103. Defendant breached this duty by failing to investigate properly and failing to pay valid claims.

104. Defendant's failure to investigate properly and/or practice of conducting a goal-oriented investigation was/were willful and/or reckless.

105. As a result of Defendant's breach, Plaintiffs has suffered damages.

## COUNT IV- UNJUST ENRICHMENT

106. Paragraphs 1 to 105 are hereby re-alleged as if they were fully restated herein.

107. Defendant accepted premium payments on the part of the Plaintiffs in exchange for insurance coverage to be paid for loss due to collapse of property.

108. Defendant accepted the premium payments and refused to provide the insurance coverage.

109. As a result, Plaintiffs have suffered damages.

## COUNT V- BAD FAITH DENIAL

110. Paragraphs 1 to 109 are hereby re-alleged as if they were fully restated herein.

111. Plaintiffs in this matter made a demand for payment under a valid insurance policy pursuant to Tennessee Code Annotated 56-7-105.

112. Defendants have no basis for denying the claims.

113. Defendants have refused to pay the claims.

114. Defendant's actions in refusing to pay the claims were not in good faith.

115. As a result of Defendant's actions, Plaintiffs have suffered losses.

**WHEREFORE, PREMISES CONSIDERED, PLAINTIFFS PRAY:**

1. For a jury of 12 to consider this action

2. Plaintiffs be granted a judgment against the Defendant for the sum of money to be determined by the Jury to be sufficient to compensate her for the damages complained of herein

3. Plaintiffs be awarded reasonable attorney fees pursuant to the Tennessee Consumer Protection Act (T.C.A. § 47-18-101 *et seq.*) and the Tennessee Bad Faith Refusal to Pay (T.C.A. § 56-7-105)

4. Defendant be taxed with the costs of this civil action

5. Defendant pay treble damages under the Tennessee Consumer Protection Act. (T.C.A. § 47-18-101 *et seq.*)

6. Defendants pay all applicable penalties under the Tennessee Bad Faith Refusal to Pay statute. (T.C.A. § 56-7-105)

7. Defendant be made to pay punitive damages

8. Plaintiffs recover both Pre and Post Judgment Interest

9. All other damages allowed under Tennessee law

10. Discretionary costs as authorized by the Rules or law

11. Further and general relief as justice may require

Respectfully Submitted,

**THE HIGGINS FIRM**


**/s/ JONATHAN A. STREET**
**JONATHAN A. STREET, BPR No. 21712**
Attorney for the Plaintiffs
116 Third Avenue South
Nashville, Tennessee 37201
(615) 353-0930