IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PIONEER CHRISTIAN ACADEMY )
)
v. ) NO. 3-12-0610
) JUDGE CAMPBELL
THE CINCINNATI INSURANCE CO. )

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 30). For the reasons stated herein, Defendant's Motion is DENIED.

FACTS

This is an action for the alleged failure to pay a covered loss under an insurance contract. Plaintiff contracted with Defendant for property insurance covering property at 4479 Jackson Road, Whites Creek, Tennessee ("the Property"). Plaintiff has asserted claims for breach of contract, violation of the Tennessee Consumer Protection Act ("TCPA"), negligence, unjust enrichment, and bad faith denial of its claim under Tennessee statutory law. Docket No. 1.[1]

Defendant filed an Answer and Counterclaim (Docket No. 6), denying Plaintiff's allegations and raising claims for declaratory judgment, unjust enrichment and reverse bad faith.[2]

During parts of 2009 and 2010, the Property was leased by Plaintiff to Nashville Global Academy, a charter school. It is undisputed that sometime in the summer of 2010, Nashville Global

---

[1] Plaintiff has agreed to dismiss its TCPA claim. Docket No. 38, p. 8.

[2] Defendant has agreed to dismiss its claims based upon the allegation that the property was vacant for 60 days before the water loss was discovered. Docket No. 31, n. 7.

Academy lost its charter and vacated the Property. Plaintiff alleges that after Nashville Global Academy vacated the premises, Plaintiff began to look for a new tenant.

On August 6, 2010, a water supply line at the Property failed, causing water damage to the Property. Pursuant to the contract between the parties, Defendant paid for damages to the Property caused by the water damage. Thereafter, Plaintiff made a claim under the business income section of its policy with Defendant for lost rental income. That section provides, in part, that Defendant will pay for the actual loss of business income Plaintiff sustains due to the necessary suspension of its operations during a period of restoration of the Property. "Business income" is defined to include net income that would have been earned or incurred.

Plaintiff claims that, as a result of the water damage to the Property, Plaintiff lost income from a new tenant for the Property. Plaintiff asserts that, at the time of the water supply pipe failure, it had an agreement with Family Christian Academy ("FCA") to lease the Property for the coming year. Plaintiff provided, in support of its business income loss claim, an Affidavit of Belinda Scarlata, Administrator of FCA, dated December 7, 2010.

Scarlata's Affidavit (Docket No. 32-1) stated, among other things, that she contacted Rev. Samuel Gage, the Chairman of Plaintiff's Board of Directors, expressing FCA's desire to lease and possibly eventually purchase the property. Scarlata stated that she and Rev. Gage had several conversations, culminating with her request to send for her review a lease agreement that would formalize their agreement. Moreover, Scarlata stated: "Very shortly thereafter, we became aware of the problems caused by a water leak in the building and that it would not be available for the beginning of the current school year. While it would not be possible for us to start a lease term and

2

relocate during the current school year, we are still quite interested in leasing the property for the next school year if it is still available." Docket No. 32-1.

With regard to her Affidavit, Scarlata later testified: "I felt that I was being used at that point because I felt like - - I was told that I needed - - they needed an affidavit from me . . . and then I realized that they were maybe making claims, or thinking that, that our interest was more - - or that the insurance company may have thought that our interest was more serious than it really was, and I felt like it was misrepresented." Scarlata Deposition (Docket No. 36-4), p. 26. Scarlata testified that the initial affidavit presented to her by Plaintiff made her uncomfortable because it made it sound like FCA was about to purchase the building and then could not as a result of water damages. *Id*., p. 23. "And that wasn't the truth. The truth was that we had inquired about the property, we were interested in the property, we didn't ever know about the water damage." *Id*. Scarlata testified that the reason she did not pursue a lease with Plaintiff was not because of the water loss, but because FCA was able to go ahead and secure everything with its current landlord. *Id*., p. 30.

In her deposition, Scarlata testified that FCA and Plaintiff never had an agreement, formal or informally, to lease the Property. Scarlata Deposition (Docket No. 36-4), p. 19. Scarlata testified that she inquired about Plaintiff's property only as a "backup plan," just in case FCA's landlord decided to sell out from under FCA and that "he [Gage] never called me back and gave me a price, and we never even had a discussion about a lease because I never got that price." *Id*., p. 15. "[W]e never discussed a penny, ever." *Id*., p. 18.

Plaintiff's corporate representative, Sydney Jordan, testified that he and Gage went to FCA and met with Scarlata, talked about a five-year lease and agreed on a price of $1,000 less per month than what Plaintiff had charged Nashville Global. Jordan Deposition (Docket No. 36-1), p. 82. On

3

the other hand, Scarlata testified that they never met at all. Scarlata Deposition (Docket No. 36-4), pp. 16-17. Gage testified that he did not think they ever agreed on a price with FCA or on a term for the lease. Gage's Examination under Oath (Docket No. 33-1), p. 49.

Jordan also testified that the "kink" in their discussions with FCA was the water loss and their agreement was contingent on Plaintiff getting the Property to the point where FCA could use it "reasonably soon." Jordan Deposition, p. 83. Yet Scarlata testified she didn't even know about the water damage (Scarlata Deposition, p. 23) and FCA's reason not to lease the property had nothing to do with a water loss. *Id*, p. 65 ("I just know that that didn't affect my decision and I had no knowledge of it at the time.") .

Defendant has moved for summary judgment on all of Plaintiff's claims, asserting that Plaintiff had no agreement with any tenant or prospective tenant to lease the Property at the time of the loss. Therefore, Defendant argues, Plaintiff cannot demonstrate that it incurred an actual loss of business income as a result of the water damage.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

4

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## DISCUSSION

Because the policy of insurance at issue was issued for the benefit of a Tennessee non-profit corporation by a company doing business in Tennessee, Tennessee law controls the substantive claims and defenses in this case. Tenn. Code Ann. § 56-7-102. As the insured, Plaintiff has the burden of proving coverage for the claimed loss. *Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 22 (Tenn. Ct. App. 2002).

The purpose of business interruption insurance is to protect the insured against losses that occur when its operations are unexpectedly interrupted and to place it in the position it would have occupied if the interruption had not occurred. *Continental Ins. Co. v. DNE Corp.*, 834 S.W.2d 930, 934 (Tenn. 1992). A policy of this type may not be used to place the insured in a *better* position than it would have occupied in the absence of the catastrophe. *Id*.

The disputed issue here is whether Plaintiff can show that but for the water damage, FCA[3] would have occupied the Property and paid rent. Plaintiff must show at least a genuine issue of material fact as to whether, because of the water damage, FCA could not occupy the Property as agreed and Plaintiff actually lost that business income.[4]

Clearly there are disputed issues of fact as to whether, at the time of the water damage, Plaintiff had an agreement with FCA to lease the Property. Plaintiff's corporate representative, Sydney Jordan, testified that an agreement was reached regarding the term of the lease and the price. Jordan Deposition (Docket No. 36-1), pp. 109-110. Jordan testified that FCA would have been a tenant had it not been for the water loss. *Id.*, p. 124. On the other hand, the Chair of Plaintiff's Board of Directors, Sam Gage, testified that he did not think they ever agreed on a price with FCA and that they did not have an agreement as to the term of the lease. Gage's Examination under Oath (Docket No. 33-1), p. 49.[5] As noted above, Scarlata has provided contradictory testimony in her Affidavit, Deposition and E-mail.

---

[3] Plaintiff's allegations concerning other tenants is merely speculative. Similarly, any claim that Plaintiff itself intended to use the Property is not persuasive, given that the space Plaintiff intended to use was the west building, not the water-damaged building. Jordan Deposition, p. 40.

[4] With regard to Plaintiff's assertion that, had it been unable to find a new tenant, it could have made a claim against Nashville Global for lost rents, that claim is defeated by Plaintiff's admission that it could not go after Nashville Global because Nashville Global had no assets. Jordan Deposition (Docket No. 33-2), p. 73.

[5] In an e-mail from Scarlata to Plaintiff's representatives, she stated: "I did initiate a phone call about renting some space and using the football field. But to be quite honest, no one ever returned my call with availability, quoted me a price, showed me a lease, walked me through the facility, etc. I believe that I actually have the possibility of weakening your case, not strengthening it, because of the lack of follow-through that transpired between Pastor Sam and I." Docket No. 32-2.

Defendant asserts that the dispute concerning the alleged agreement shows there was no meeting of the minds. The Court finds, however, that a reasonable jury could find that there was a meeting of the minds which was later denied. Defendant admits that the evidence as to whether there was an agreement between Plaintiff and FCA presents a "he-said, she-said" issue.

Until this factual dispute - whether Plaintiff would have had a tenant but for the water loss - is resolved, the legal issue of coverage upon which Plaintiff's claims are based cannot be determined. Defendant has not carried its burden of showing the absence of any genuine issue of material fact, and its Motion for Summary Judgment is denied.

IT IS SO ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE